Victor CHENG, Plaintiff,

v.

**NEW YORK TELEPHONE COMPANY and Communications Workers of America, Local 1101, Defendants.**

No. 96 Civ. 0109(JES).

United States District Court, S.D. New York.

Aug. 31, 1999.

---

**28.** Cpt ¶¶ 14–15.

Steven M. Martin, New York City, for defendant New York Telephone Co.

Gabrielle Semel, New York City, for defendant Communications Workers of America,

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Victor Cheng brings the instant action against defendants New York Telephone Company ("NYT") and Communications Workers of America, Local 1101 ("CWA") pursuant to 42 U.S.C. § 1981; the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYHRL"); and the Administrative Code of the City of New York § 8–107 ("NYC Administrative Code"). Plaintiff alleges that defendants discriminated against him on the basis of his race. Defendants move for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons that follow, the Court grants defendants' motions for summary judgment.

### BACKGROUND

The following facts are not disputed by the parties. Plaintiff, an Asian male, was hired by NYT as a service technician on or about March 1989. *See* Complaint, dated December 14, 1995 ("Compl."), ¶ 4; Affidavit of Steven M. Martin, dated July 18, 1997 ("Martin Aff."), ¶ 5. One of plaintiff's duties as an employee of NYT was to install telephone service for NYT's customers. *See* Martin Aff. ¶ 5.

From the commencement of his employment, plaintiff was a member of the CWA, which represented him under the collective bargaining agreement ("CBA") between the CWA and NYT. *See* Compl. ¶ 4. The CBA establishes grievance and arbitration procedures for the resolution of disputes arising under the CBA. *See id.*

Plaintiff's employment relationship was also governed by "The Codes We Work

Noah A. Kinigstein, New York City, for plaintiff.

By" ("Codes"), a NYT statement of rules for employee conduct. *See* Martin Aff. ¶ 6. The Codes expressly prohibit NYT employees from engaging in business activities in competition with their employer. Section 3.3 of the Codes states:

> Employees should not engage in competitive activity or work for or assist competitors in a competitive activity. This prohibition against working for or providing assistance to competitors means not working for or assisting anyone (including the employees engaged in a self-employed activity) outside of the NYNEX group of companies in the planning, design, manufacture, sale, purchase, installation or maintenance of any equipment or service which New York Telephone or any other NYNEX company currently provides, or has viable or known plans to provide, on a tariff basis or otherwise.

Martin Aff., Exh. D, § 1, ¶ 3.3. The Codes further provide that NYT may discharge an employee for a single violation of any of its rules. *See id.* at § 1, ¶ 15.1. Plaintiff signed a form acknowledging that he had read the Codes and understood that he could be discharged for violating the Codes. *See* Martin Aff. ¶¶ 7–9; Cheng Aff. ¶ 4.

In December 1992 Michael DeLorenzo ("DeLorenzo"), a NYT assistant manager, filed a report against plaintiff after allegedly receiving complaints from customers that Plaintiff was soliciting business for a competing telephone installation company. *See* Compl. ¶ 5; Affidavit of Michael De-Lorenzo, dated July 7, 1997 ("DeLorenzo Aff."), ¶ 5. DeLorenzo's allegations prompted an investigation by NYT's Security Division. Security Investigator Stephen J. Leonette ("Leonette") reviewed Plaintiff's personal telephone billing records and discovered that Plaintiff had telephoned from his home a competing telecommunications vendor, BNM Communications. *See* Affidavit of Stephen J. Leonette, dated July 8, 1997 ("Leonette Aff."), ¶ 8. When contacted by NYT, BNM

Communications admitted that it employed a NYT service technician but refused to identify the employee. *See id.* at ¶ 9.

In the course of investigating a separate and unrelated complaint against plaintiff, Leonette met with Thomas Cham, the owner of one of NYT's customers, Confidence Consulting Centre, Ltd. ("CCC"), and with one of his employees, Lo Kinfai. *See id.* at ¶¶ 10–12. They complained that plaintiff never installed the equipment CCC ordered and had offered to perform additional work for them through another company, Global Voice Data, Inc. *See* Affidavit of Thomas Cham, dated August 4, 1993; Affidavit of Lo Kinfai, dated August 4, 1993. Plaintiff allegedly gave them a business card for Global Voice Data, Inc., that bore plaintiff's name and telephone and pager numbers. *See id.* Having kept the card, they provided it to Leonette. *See* Leonette Aff. ¶ 12.

Thereafter, NYT interviewed plaintiff, who was accompanied during the interview by his CWA shop steward. Plaintiff at first admitted to performing installation work for a private vendor, Ti–Tone, while employed by NYT. *See id.* ¶ 13. After taking a break from the interview, however, plaintiff clarified that he had worked for Ti–Tone only before he was hired by NYT. *See id.* When asked to explain the origins of the business card bearing his name, plaintiff explained that his brother may have printed the card and used plaintiff's American name because his brother was embarrassed by his own Asian name. *See id.*

After the interview, NYT reviewed company records that listed the name of plaintiff's brother as "Steven," and plaintiff does not dispute that his brother uses this name. *See id.* NYT also contacted Ti–Tone and was told by one of its managers that plaintiff had been employed by Ti–Tone until July 1993, four years after he had been hired by NYT. *See* Martin Aff., Exh. H.

On or about October 23, 1993, the NYT Security Division issued an investigative report concluding that

> although Service Technician Victor Cheng denied that he illegally installed inside wire and jacks for personal profit, the investigation conducted by Security supported the allegation that he has done so for private vendors and his own private company.

*See id.* William A. Gray, Lon Bannett and William Knot, members of NYT's Non–Management Disciplinary Committee, reviewed the investigation report and recommended that plaintiff be discharged. *See* Affidavit of William A. Gray, dated July 10, 1997, ¶ 14. Plaintiff's District Manager, Frank Mambuca, adopted the Committee's recommendation, and plaintiff's employment was terminated in January 1994. *See id.*

After his termination, the CWA filed a grievance on plaintiff's behalf regarding his dismissal. Compl. ¶ 9. Under the CBA the typical grievance procedure is a three-step process. *See* Declaration of Peter D. Maher, dated July 11, 1997 ("Maher Decl."), ¶ 7, Exh. A. If the matter is not resolved during the grievance procedure, the claim may be submitted to binding arbitration. *Id.* The CWA pursued plaintiff's grievance through each of the three steps of the grievance procedure, and NYT denied the grievance at each step. The CWA declined to prosecute further plaintiff's claim and did not make a demand for arbitration. Plaintiff does not recall when he learned that the CWA would not arbitrate his claim, but plaintiff's shop steward has testified by affidavit that he personally informed plaintiff of the union's decision in September 1994. *See* Deposition of Victor Cheng ("Cheng Dep.") 250; Declaration of William Cordova, dated July 17, 1997, ¶¶ 3, 4.

Plaintiff commenced the instant action on December 14, 1995. In his Complaint, plaintiff alleges that NYT falsely accused him of violating NYT's competitive practices policy as a pretext for discharging him on account of his race. Plaintiff further alleges that the CWA did not vigorously pursue his grievance and refused to arbitrate his claim because of his race. NYT moves for summary judgment, arguing that plaintiff fails to offer any evidence that his race played any role in his discharge. The CWA also moves for summary judgment, arguing similarly that plaintiff has failed to offer any evidence that his race influenced his representation by the CWA and further arguing that any claim against the CWA for breach of its duty of fair representation is barred by the applicable six-month statute of limitations.

## DISCUSSION

A court may grant summary judgment only if it determines that there are no genuine issues of material fact after a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

To prevail on a claim under Title VII, the plaintiff first bears the burden of establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] This burden, however, is a

---

1. The same elements constitute a claim for employment discrimination under 42 U.S.C.

light one. *See Chertkova v. Connecticut General Life Insurance Co.*, 92 F.3d 81, 87 (2d Cir.1996) A plaintiff establishes a *prima facie* case by showing (1) that he is a member of a protected class; (2) that he was qualified for the position he held; (3) that there was an adverse employment action taken against him; and (4) that the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. A plaintiff who establishes a *prima facie* case has set forth sufficient facts upon which a finding of discrimination by the employer can be predicated. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817. If the defendant does so, then the plaintiff must establish that the action taken against him was the result of unlawful discrimination. *See id.*

 In this case, NYT has presented ample evidence to support the non-discriminatory reason it has offered to justify plaintiff's discharge—his violation of NYT's competitive activities policy. Plaintiff has come forward with no evidence that this reason was merely a pretext for discrimination. Thus, quite aside from whether plaintiff has carried his burden of showing a *prima facie* case of discrimination by NYT, it is abundantly clear that a rational finding of discrimination cannot be made in this case.

The facts elicited by NYT support its claim that plaintiff's employment was terminated for engaging in prohibited business activities in competition with NYT. Thomas Cham and Lo Kinfai described to Leonette how plaintiff had solicited business for Global Voice Data, Inc., and Ti-Tone admitted that it had employed plaintiff during the period he also worked for NYT. These statements, combined with plaintiff's documented telephone call to a third telephone vendor and the unexplained business card bearing his name, strongly support NYT's conclusion that plaintiff was guilty of violating the NYT Codes.

Plaintiff argues that his alleged violation of NYT's competitive activities policy was merely a pretext for his discharge because white employees were not discharged for violations of the same policy. This claim, however, is completely unsupported by the evidence before the Court. At his deposition, plaintiff testified that two white co-workers, a Mr. Eppinger and a Mr. Cordova, told him that they also had violated the competitive activities policy but were merely reprimanded by their foreman. *See* Cheng Dep. 72, 75–76, 151–53, 322–24. These statements are in all probability inadmissible hearsay, however. In any event, plaintiff has offered no other evidence to establish the nature of these workers' misconduct or the discipline they received.

 Plaintiff further argues that DeLorenzo, the assistant manager whose report to NYT's Security Division initiated the investigation of plaintiff's activities, was a racist who made offensive jokes and comments about Asians. At his deposition, however, plaintiff could recall no specific instance in which DeLorenzo made an offensive comment, recalling only that DeLorenzo once complained that the Chinatown neighborhood was encroaching upon Little Italy. *See* Cheng Dep. 25–32, 128–29, 161–62. Plaintiff's unsupported, conclusory al-

§ 1981, the NYHRL, and the NYC Administrative Code as under Title VII. *See Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir.1984) (§ 1981); *Leslie v. BancTec Service Corp.*, 928 F.Supp. 341, 349 (S.D.N.Y.1996) (N.Y.HRL); *Landwehr v. Grey Advertising Inc.*, 211 A.D.2d 583, 622 N.Y.S.2d 17, 18 (1st Dept.1995) (N.Y.C Administrative Code).

legations of racism are insufficient to satisfy the requirements of Rule 56(e). *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

Even assuming *arguendo* that plaintiff has presented sufficient evidence of DeLorenzo's racism to raise a triable issue of fact, DeLorenzo's alleged racism is nonetheless far too tangential to be relevant to plaintiff's claim of discriminatory discharge because DeLorenzo played no role in NYT's investigation of plaintiff or in the review of the evidence collected in the investigation. Although DeLorenzo did initiate NYT's investigation of plaintiff, NYT would still have discovered plaintiff's misconduct even if DeLorenzo had never reported the customer complaints he received. Indeed, the NYT Security Division interviewed Cham and Kinfai and obtained from them the business card bearing plaintiff's name while investigating a separate complaint unrelated to DeLorenzo's report. Because DeLorenzo played no role in the investigation of plaintiff or the decision to discharge plaintiff, evidence of DeLorenzo's racism offers no basis for concluding that plaintiff's discharge was racially motivated.[2] In the absence of any other evidence to rebut NYT's proffered reason for terminating plaintiff's employment, the Court must grant NYT's motion for summary judgment.

■ Plaintiff's claim of racial discrimination by the CWA similarly fails for lack of any evidence of discriminatory animus or disparate treatment of Asian union members.[3] Plaintiff's sole basis for his claim of discrimination is the allegedly more vigorous and more successful representation the CWA afforded another white worker. However, plaintiff admitted at his deposition that he had no knowledge of the misconduct of which this other worker was accused, the employment action taken against him, or the action taken by the CWA on his behalf. *See* Cheng Dep. 88, 260–62. Thus, plaintiff fails even to establish a *prima facie* case of discrimination because he can point to no circumstances relating to his representation by the CWA that give rise to a rational inference of discrimination. Accordingly, this Court must grant the CWA's motion for summary judgment.

### CONCLUSION

For the reasons stated above, the Court grants defendants' motions for summary judgment. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED**.

---

**2.** Plaintiff also offers the patently frivolous argument that NYT's proffered reason for discharging him violates New York Labor Law § 201–d(2)(c), which prohibits an employer from discharging an employee on the basis of the employee's "legal recreational activities outside work hours." Plaintiff's alleged installation of telephone equipment for personal profit obviously was not a "recreational activit[y]" within the meaning of this statute.

**3.** To the extent that plaintiff asserts a claim for breach of CWA's duty of fair representation, this claim is clearly time-barred. It is well settled that a claim for breach of the duty of fair representation must be brought within six months of the time a plaintiff discovers the acts constituting the breach of duty. *See King v. New York Telephone Co., Inc.*, 785 F.2d 31, 34 (2d Cir.1986). The undisputed evidence before the Court establishes that the CWA told plaintiff no later than September 1994, more than one year before the commencement of this action, that it would not demand arbitration of his claim under the CBA and that his sole remaining remedy was to litigate his claims at his own expense. Plaintiff does not argue that any additional facts were necessary to put him on notice of the CWA's alleged breach of its duty of fair representation.